**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rodney KELLAMS, Defendant–Appellant.**

**No. 93–6424.**

United States Court of Appeals, Sixth Circuit.

Submitted March 15, 1994.

Decided June 14, 1994.

Brian E. Davis, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Louisville, KY, for plaintiff-appellee.

Fred R. Radolovich (briefed), Louisville, KY, for defendant-appellant.

Before: JONES, BOGGS, and DAUGHTREY, Circuit Judges.

DAUGHTREY, Circuit Judge.

Following his guilty plea to the offense of mail fraud, the defendant, Rodney Kellams, appeals to this Court and challenges the determination that his sentence should be enhanced pursuant to the "criminal livelihood" provision of U.S.S.G. § 4B1.3. For the reasons detailed in this opinion, we uphold the sentence imposed upon Kellams and affirm the judgment of the district court.

## I.

In November of 1991, Kellams, in the name of Quality Products, began sending invoices through the United States mail to local government road departments in Georgia, Indiana, and Kentucky, demanding payment for products that he never provided to those governmental entities. Amazingly, payments on the invoices were then received through the mail by the defendant at a post office box rented in Louisville, Kentucky. In fact, between November 1991 and June 30, 1992, the defendant received a total of $15,-917.41 from defrauded county governments. Eventually, Kellams was arrested, and on

June 28, 1993, he entered a plea of guilty to the charge of mail fraud.

At the sentencing hearing, the defendant again admitted committing the charged offense and expressed remorse for his wrongdoing. The presentence investigation report submitted to the district court preliminarily reflected an offense level computation of nine but, pursuant to the dictates of U.S.S.G. § 4B1.3,[1] eventually concluded that an offense level of 11 was proper. The district judge accepted the probation officer's recommendation, found that the defendant's offense was committed "as part of a pattern of criminal conduct engaged in as a livelihood," and sentenced Kellams to four months in custody and three years of supervised release with four months of home detention. Additionally, the defendant was ordered to make full restitution to the victims of the crime.

## II.

■ We review the district court's application of the sentencing guidelines *de novo* and its supporting factual findings for clear error. *United States v. Muhammad,* 948 F.2d 1449, 1455 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). "Clear error" occurs only when we are left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Id.* at 574, 105 S.Ct. at 1511.

■ Before applying the provisions of U.S.S.G. § 4B1.3 to a particular case, a sentencing court must conclude both that (1) the committed offense was part of a "pattern of criminal conduct" and (2) the criminal conduct was "engaged in as a livelihood" by the defendant. Kellams does not contest the finding that the mail fraud scheme continuing from November 1, 1991, until June 30, 1992, constituted a "pattern of criminal conduct."

Pursuant to Application Note 1 to U.S.S.G. § 4B1.3, a " '[p]attern of criminal conduct' means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses." Previously, this Court has concluded that seven months is just such a "substantial period of time." *United States v. Reed,* 951 F.2d 97, 101 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 409 (1992).

■ The defendant does disagree, however, with the district court's finding that the admitted criminal conduct was "engaged in as a livelihood." Application Note 2 to U.S.S.G. § 4B1.3 defines the phrase "engaged in as a livelihood" to mean that:

(1) the defendant derived income from the pattern of criminal conduct that in *any* twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; *and* (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (*e.g.,* the defendant engaged in criminal conduct other than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct.)

(Emphasis added.)

On appeal, the defendant does not contest the government's conclusion that the test of Application Note 2 is satisfied if the November 1, 1991, to October 31, 1992, twelve-month period identified by the district court is used for the required calculations. Instead, the defendant contends that either calendar year 1991 or calendar year 1992 should have been chosen as the applicable twelve-month period. The defendant, however, cites to no authority in support of his position.

■ The plain language of Application Note 2 entitles the trial court to consider *any* twelve-month period in its calculation.

---

1. U.S.S.G. § 4B1.3 provides:

    If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less than

13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

Moreover, confining examination of income to calendar year segments would, as noted by the district judge, result in a situation in which "the defendant is not fully being accounted for for some of his illegal acts." Use of only calendar year 1991 figures would, of course, misrepresent the extent of the defendant's criminal activity by ignoring six months of fraudulent acts and about $15,000 of ill-gotten gains. Similarly, use of only 1992 figures could have potentially distorted the portrait of the legitimacy of the defendant's income for that year.

■ The district court appropriately noted "that it may be a more accurate determinate [sic] of the true nature of the defendant's business activity to begin with the time that the individual became a criminal and to look at 12 months thereafter...." Furthermore, the relevant application note to U.S.S.G. § 4B1.3 refers not to "years," either calendar or fiscal, but to "any twelve-month period." It cannot be legitimately argued in this case, therefore, that the district court erred in choosing the period from November 1, 1991, the approximate time the defendant began mailing the fraudulent invoices, until October 31, 1992, as the appropriate time frame for considering the relative magnitude of Kellams's criminal activity.[2]

During that period, the defendant generated $15,917.41 from his criminal enterprises. During that same period, the applicable federal hourly minimum wage was $4.25. Consequently, 2,000 times the minimum hourly wage equalled only $8,500, considerably less than the income from the defendant's fraudulent schemes during the chosen twelve-month period.

Furthermore, in the words of the relevant application note, "the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period." U.S.S.G. § 4B1.3, Application Note 2. Although the defendant claimed gross receipts of $47,260 during calendar year 1991, he also claimed legitimate business losses from that same period that reduced his net income for 1991 to only $1,868. Even assuming Kellams realized all of that net income in November and December of 1991, consideration of the sum of that amount and the admitted $2,400 in *legitimate* income earned by Kellams from January through October of 1992 still leads to the inescapable conclusion that the defendant must have devoted himself primarily to criminal activities as a source of livelihood between November 1, 1991, and October 31, 1992.

## III.

We conclude that, based upon the explicit language of the application notes to U.S.S.G. § 4B1.3, the district court was not limited to consideration of only calendar year financial figures in determining whether the defendant engaged in criminal activity as a livelihood. Rather, the district judge was justified in examining figures from the twelve-month period that began with the initiation of the defendant's criminal activities, because those figures are a more accurate indication of whether proceeds from crime served as the defendant's primary source of income during that time. Finding that Kellams, in fact, engaged in criminal conduct as a livelihood from November 1991 through October 1992, the district court properly utilized the provisions of U.S.S.G. § 4B1.3 in sentencing the defendant. The district court's sentencing order is, therefore, AFFIRMED.

---

**2.** In *United States v. Reed,* 951 F.2d at 101–02, this Court ignored the calendar year limitation proposed by the defendant and engaged in computations involving the twelve-month period *ending* with the cessation of Reed's criminal conduct. Use of an analogous time period in this case would also support the application of the provisions of U.S.S.G. § 4B1.3 to defendant Kellams.