**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0116n.06

**Case No. 17-1577**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 07, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| In re: TOWN CENTER FLATS, LLC, | ) | |
| | ) | |
| Debtor, | ) | |
| ------------------------------------------------------------ | ) | ON APPEAL FROM THE |
| TOWN CENTER FLATS, LLC, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Appellant, | ) | DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| ECP COMMERCIAL II LLC, | ) | |
| | ) | O P I N I O N |
| Appellee. | ) | |

BEFORE: COLE, Chief Judge; SILER and COOK, Circuit Judges.

COLE, Chief Judge. Town Center Flats asks us to find that it failed to redeem property in 2009 because the parties, by agreement, redeemed the property after the deadline set by the judgment of a Michigan state court. But Michigan courts have found that parties may extend the redemption deadline for foreclosures in other contexts, and we see no reason why a judicial foreclosure should be treated differently. Town Center Flats has also failed to show that the bankruptcy court's factual findings were clearly erroneous. We affirm.

## I. BACKGROUND

The Town Center condominium project seemed destined to fail. The project showed signs of trouble as early as 2008, when Fox Brothers Company filed a construction lien claim for

unpaid labor and supplies. Fox Brothers filed the claim against Town Center Flats, Town Center Development, and Vincent DiLorenzo, the manager and principal for both entities. It asserted the lien against a 53-unit condominium building owned by Town Center Flats, the appellant. Fox Brothers also named as a defendant and served Keybank National Association. Keybank was the only other entity with a secured interest in the property. Keybank never appeared in the foreclosure action, and its involvement in this case ended altogether in May 2014 when it assigned its mortgage interest to ECP Commercial II LLC, the appellee here.

Fox Brothers' construction lien claim was heard by the Macomb Circuit Court in Michigan. That court entered a judgment of foreclosure in favor of Fox Brothers. The Macomb County Sheriff then executed a sheriff's deed on the property in favor of Fox Brothers, with a redemption amount of $32,244.39. A few weeks later, on November 2, 2009, the Macomb Circuit Court confirmed the sale and set a redemption deadline of December 2, 2009.

This deadline meant that if Town Center Flats did not satisfy the redemption amount, ownership of the property would transfer to Fox Brothers. Although the Macomb Circuit Court set a deadline of December 2, the bankruptcy court found that the parties to that litigation agreed to extend the period until December 4. On December 4, DiLorenzo gave Fox Brothers $32,500 in checks and cash, though some of the checks appeared to have come from DiLorenzo's relatives. Fox Brothers nevertheless executed a quit-claim deed from it to Town Center Development for the property, and it released its lien claims.

Town Center Flats and Town Center Development are legally distinct entities, but the parties to the Macomb Circuit Court litigation tended to blur them. Documents stemming from the foreclosure are variously captioned against both entities, against "Town Center," against only "Town Center Development Co., Inc.," or against "Town Centers Development Co., Inc. and

those claiming through them." And the order confirming the sale to Fox Brothers—the key judgment in this dispute—was styled as a sale of property owned by "Town Centers Development Co., Inc. and those claiming through them," even though it was in fact owned by Town Center Flats.

The Town Center entities' troubles came to a head in early 2015, when Town Center Flats and Town Center Development each filed for Chapter 11 bankruptcy. Before the bankruptcy court, Town Center Flats argued that it had failed to redeem the property, so the property had gone to Fox Brothers, which in turn sold the property to Town Center Development by quit-claim deed. Most importantly from ECP Commercial's perspective, Town Center Flats argued that its failure to redeem meant that Keybank's mortgage had been foreclosed.

The bankruptcy court concluded that under Michigan law, parties could agree to extend the redemption period, even for a judicial foreclosure. It then found that the parties had extended the redemption period to December 4, 2009, and that the $32,500 in payments that DiLorenzo gave to Fox Brothers that day were intended to redeem the property. In other words, the quit-claim deed did not—and could not—operate to transfer the property from Fox Brothers to Town Center Development because Town Center Flats redeemed the property. And that property remains subject to Keybank's mortgage interest. The district court affirmed.

Town Center Flats now appeals.

## II. ANALYSIS

We review the bankruptcy court's legal conclusions without deference, and we review its findings of fact for clear error. *In re Nowak*, 586 F.3d 450, 454 (6th Cir. 2009). We agree with the bankruptcy court that parties to a foreclosure sale, even a judicial one, may extend the redemption period by agreement. The bankruptcy court's findings that the parties extended the

redemption period to December 4 and that the property was redeemed by that date were not clearly erroneous. Because we find that the property was redeemed, we do not address the parties' alternative argument about whether Keybank's liens (assigned to ECP Commercial) were extinguished.

## A. Parties May Extend Redemption Periods By Agreement.

The bankruptcy court correctly found that parties may agree to extend the redemption period following a Michigan foreclosure sale, even when the period is set by a state court judgment. The bankruptcy court accorded full faith and credit to the Michigan court's judgment.

Michigan provides for a three-step process for a judicial construction lien foreclosure, the type of foreclosure that Fox Brothers carried out. *See* Mich. Comp. Laws § 570.1121. First, a court must enter a judgment authorizing a foreclosure sale. *Id.* § 570.1121(1). Second, after the foreclosure sale, that court must enter an order confirming the sale and setting a redemption period. Under the statute, the redemption period "shall not exceed 4 months." *Id.* § 570.1121(3). Finally, if redemption does not occur, the court must enter a "final order directing the distribution of all of the funds obtained from the foreclosure sale in accordance with the priorities of the parties as determined by the court." *Id.* § 570.1121(4). No further action is required by the court if redemption occurs.

Federal courts must give the same preclusive effect to state court judgments as they would be given under the law of the State where the judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). As we have explained, to "determin[e] whether to accord preclusive effect to a state-court judgment," we start with the "fundamental principle that 'judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage

in the courts of such State . . . from which they are taken.'" *In re Bursack*, 65 F.3d 51, 53 (6th Cir. 1995) (quoting 28 U.S.C. § 1738). This means that if Michigan were to permit parties to agree to a redemption period different from the one entered in a state court judgment, there is no full faith and credit issue.

While no Michigan court has squarely addressed this question, its case law all points in the same direction: parties to a foreclosure sale, even a judicial one, may extend the redemption deadline by agreement. The Supreme Court of Michigan has held that "the execution creditor and the execution debtor may bind themselves by an agreement to extend the time for redemption." *Pellston Planing Mill & Lumber Co. v. Van Wormer*, 165 N.W. 724, 726 (Mich. 1917).

This precedent may be old, but it has aged well, and other Michigan courts continue to apply these principles. For instance, in *Keybank*, a foreclosure-by-advertisement case, the court held that parties "may validly contract to waive or extend the statutory period of redemption." *Keybank Nat'l Ass'n v. Ameriquest Mortg. Co.*, No. 242925, 2004 WL 1057814, at *4 (Mich. Ct. App. May 11, 2004). That is, parties may set a different redemption period than the one mandated by a statute. As it explained, "if a mortgagee . . . extends the right of payment of the mortgage debt beyond the redemption period, he abandons rights acquired as a purchaser of the mortgaged property on foreclosure of the mortgage, and in legal effect continues the relation of mortgagor and mortgagee between himself and his debtor." *Id.*

Several federal district courts have also noted that under *Keybank*, parties may privately extend a redemption deadline. *See Fisher v. JP Morgan Chase Bank, NA*, No. 14-12734, 2015 WL 871066, at *4 (E.D. Mich. Feb. 27, 2015) ("Michigan cases hold that the time provided by statute for redemption may be extended by agreement of the parties."); *Wheat v. Deutsche Bank*

*Nat'l Tr. Co.*, No. 2:13-CV-13715, 2014 WL 3778240, at *9 (E.D. Mich. July 31, 2014) (same); *see also* 59A C.J.S. Mortgages § 1435 ("[P]arties may, by contract, extend or reduce the time allowed by law for redemption.").

Town Center Flats' only argument to the contrary is that these cases considered foreclosure by advertisement, and not a judicial foreclosure. But this distinction makes no difference. Nothing in any of these authorities evinces any intention to treat foreclosure by advertisement differently from a judicial foreclosure. In fact, there is even more reason to find that the parties can extend the redemption period for judicial foreclosure on a construction lien. In Michigan, a construction lien "sale shall be conducted in the same manner as a sale on execution." Mich. Comp. Laws § 570.1121. And the Supreme Court of Michigan has held that parties in an execution sale may agree to extend the redemption period. *Pellston Planing Mill & Lumber Co.*, 165 N.W. at 726. In a construction lien sale, like an execution sale, the parties may therefore extend the redemption period by agreement.

### B. The Bankruptcy Court Did Not Clearly Err When It Found That the Parties Extended the Redemption Period and That Town Center Flats Redeemed the Lien.

The bankruptcy court did not clearly err when it found that the parties had extended the redemption period to December 4, 2009 and that the $32,500 payment operated as a redemption. A lower court clearly errs only if "we are left with the definite and firm conviction that a mistake has been committed." *United States v. Kellams*, 26 F.3d 646, 648 (6th Cir. 1994) (citation omitted). No "definite and firm conviction" exists here. *Id.*

#### 1. Redemption Deadline

The bankruptcy court's finding that the parties extended the redemption deadline to December 4, 2009 is well-supported by the record. The bankruptcy court heard testimony from Fox Brothers' attorney in the foreclosure litigation that Fox Brothers had agreed to extend the

redemption period to December 4. DiLorenzo, though claiming not to know whether the redemption period had been extended, likewise testified that he understood he needed to pay Fox Brothers $32,500 by December 4 or Town Center Flats and Town Center Development would "never [] get the property back." (Bankruptcy Court Op., R. 3, Page ID 1050.) The bankruptcy court also pointed out that the Town Center entities had filed motions in state court proceedings that said "[t]he redemption period in this matter was extended to December 4th, 2009 at 5:00pm by the parties." (*Id.* at Page ID 1049.) Finally, the bankruptcy court noted that Town Center parties never paid transfer taxes on the property, which would have been required if the property had been transferred to it by Fox Brothers, rather than redeemed.

None of the snippets of trial testimony or pleadings that Town Center Flats has strung together compels a different result. The most it can muster is a statement from DiLorenzo that "[i]f you don't redeem by a certain date it's over, and apparently this was over on the 2nd of December, not on the 4th." (Tr., R. 3, Page ID 840.) Given the other evidence, this thin statement from DiLorenzo about what "apparently" happened does not leave a "definite and firm conviction that a mistake has been committed." *Kellams*, 26 F.3d at 648.

### 2. $32,500 Payment

Nor did the bankruptcy court clearly err when it found that the $32,500 paid by DiLorenzo to Fox Brothers was a redemption, not a sale. The bankruptcy court pointed to testimony from Fox Brothers' attorney that she prepared "the actual original quit-claim deed [] to exchange for the redemption funds." (Tr., R. 3, Page ID 449.) She explained that the quit-claim deed said "full consideration of [$32,378.90]," the amount on the foreclosure. An expert witness also testified on behalf of ECP Commercial that quit-claim deeds are used to convey titles

following a redemption (and to address title defects), rather than for a sale. (Bankruptcy Court Op., R. 3, Page ID 1051.)

True, the quit-claim deed named Town Center Development, not Town Center Flats. But so did the state court's order. And Town Center Flats may also be correct that the $32,500 payment came through a series of personal checks, rather than a single check drawn from its business account. At best, this shows there might be another possible view of the evidence. Town Center Flats all but concedes that the view taken by the bankruptcy court is equally possible—as it put it, "[t]here are two explanations for the payment of the $32,500 on December 4, 2009." Appellant's Opening Br. 17. This is not clear error. As we have explained, "[i]f there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Kellams*, 26 F.3d at 648.

### III. CONCLUSION

We affirm the judgment below.